UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

AARON C.,

                          Plaintiff,

            v.

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____

**DECISION AND ORDER**

1:23-CV-01036 EAW

## <u>INTRODUCTION</u>

Represented by counsel, plaintiff Aaron C. ("Plaintiff") brings this action pursuant to Title II and Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 11; Dkt. 14). For the reasons discussed below, Plaintiff's motion (Dkt. 11) is granted in part and denied in part, and the Commissioner's motion (Dkt. 14) is denied.

## BACKGROUND

Plaintiff protectively filed his applications for DIB and SSI on July 14, 2014.[1]  (Dkt. 7 at 115-17, 187-93).  In his applications, Plaintiff alleged disability beginning October 22, 2012.  (*Id.* at 117, 187, 192).  Plaintiff's applications were initially denied on October 21, 2014.  (*Id.* at 117-31).  At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") William M. Weir on March 10, 2017.  (*Id.* at 1080-1114).  On April 26, 2017, the ALJ issued an unfavorable decision denying Plaintiff's claims.  (*Id.* at 20-33, 1294-1310).  Plaintiff then requested review by the Appeals Council, which the Council denied on August 25, 2017.[2]  (*Id.* at 10-14, 1322-27).

Plaintiff then filed an action in this Court, which remanded the matter for further proceedings on May 24, 2019.  (*Id.* at 1286-92).  Thereafter, the Appeals Council vacated the ALJ's decision and remanded the matter for further proceedings on July 17, 2019.  (*Id.* at 1317-20).  Plaintiff testified before the same ALJ at his second hearing held on February 18, 2020, and the ALJ issued an unfavorable decision on April 2, 2020.  (*Id.* at 1212-49, 1329-53).  Plaintiff then requested review by the Appeals Council, which the Council

---

[1]    When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

[2]    Following the Appeals Council's denial of review, Plaintiff filed his second applications for DIB and SSI benefits on August 31, 2017, alleging the onset of his disability on August 26, 2017—the date following the Appeals Council's denial of review of his original applications. (Dkt. 7 at 1250-83, 1594-1606).  The Appeals Council directed the consolidation of Plaintiff's claims, which were subsequently denied by ALJ Weir on April 2, 2020.  (*Id.* at 1319, 1332-54).

granted and remanded the matter for further proceedings on March 28, 2022. (*Id.* at 1363-68). Plaintiff testified at his third hearing held before ALJ Roxanne Fuller on September 20, 2022. (*Id.* at 1171-1211). On December 5, 2022, the ALJ issued a partially favorable decision finding Plaintiff disabled for a period of disability from October 22, 2012, through February 17, 2020, but not disabled on February 18, 2020, and thereafter. (*Id.* at 1129-58). Following the ALJ's decision, Plaintiff filed his objections, but the Appeals Council declined to assume jurisdiction, making the ALJ's December 5, 2022, decision the final decision of the Commissioner. (*Id.* at 1115-18).

## LEGAL STANDARD

### I.  District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation

omitted); *see also Wagner v. Sec'y of Health & Hum. Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law."  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.  **Disability Determination**

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id.* § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id.* § 404.1520(d). If the impairment meets or medically

equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1529, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *Id.* § 404.1520(e).  The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id.* § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id.* § 404.1520(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

When the ALJ finds a claimant disabled at any point, the ALJ then must follow an additional eight-step evaluation process for the Title II claims and a seven-step process for the Title XVI claims.  20 C.F.R. §§ 404.1595, 416.994.

At step one for the Title II claims, the ALJ must determine if the claimant is engaged in substantial gainful activity.  *Id.* § 404.1594(f)(1).  For the Title XVI claims, the performance of substantial gainful activity is not a factor used to determine medical improvement.  *Id.* § 416.994(b)(5).  If the claimant has not engaged in substantial gainful

activity, then step two for the Title II claims and step one for the Title XVI claims require the ALJ to consider whether the claimant has an impairment that meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the claimant has such an impairment, then the claimant's disability will be found to continue. *Id.* §§ 404.1594(f)(2), 416.994(b)(5)(i).

If the claimant does not suffer from such an impairment, then per step three for the Title II claims and step two for the Title XVI claims the ALJ is required to determine whether any medical improvement has occurred. *Id.* §§ 404.1594(f)(3), 416.994(b)(5)(ii).

If there has been medical improvement, then the ALJ determines whether it is related to the claimant's ability to do work, *i.e.* whether there has been an increase in the claimant's RFC, based on the impairment that was present at the time of the most recent favorable medical determination. *Id.* §§ 404.1594(f)(4), 416.994(b)(5)(iii). If this step reveals no medical improvement or if the ALJ concludes at step four that the improvement was unrelated to the claimant's ability to work, then per step five for the Title II claims and step four for the Title XVI claims the ALJ is required to consider whether any specified exceptions apply. *Id.* §§ 404.1594(f)(5), 416.994(b)(5)(iv).

If, however, medical improvement related to the ability to work is shown, then the ALJ determines whether all of the claimant's impairments in combination are severe. *Id.* §§ 404.1594(f)(6), 416.994(b)(5)(v). If the impairments are found to be severe, then the ALJ is required to assess the claimant's RFC based on all current impairments and

determine whether the claimant is able to perform past relevant work. *Id.* §§ 404.1594(f)(7), 416.994(b)(5)(vi).

Finally, if the claimant is unable to perform his or her past relevant work, then step eight for the Title II claims and step seven for the Title XVI claims require the ALJ to determine whether the claimant is capable of performing "any other work," giving consideration to claimant's age, education, and past work experience. *Id.* §§ 404.1594(f)(8), 416.994(b)(5)(vii). If the claimant can do other work, then disability will be found to have ended. *Id.*

For the medical improvement analysis, "the burden is with the agency to prove that the claimant is no longer disabled." *Jones v. Comm'r of Soc. Sec.*, No. 22-CV-10571 (SN), 2024 WL 916345, at *6 (S.D.N.Y. Mar. 4, 2024) (quoting *Milliken v. Saul*, No. 19-cv-09371 (PED), 2019 WL 1030606, at *33 (S.D.N.Y. Mar. 17, 2021)); *see also Denise C. v. Kijakazi,* No. 3:23-CV-052 (ATB), 2023 WL 6065949, at *3 (N.D.N.Y. Sept. 18, 2023) ("Paramount to the medical improvement standard is the presumption that when the agency finds a claimant disabled, that disability will continue." (quoting *Milliken*, 2021 WL 1030606, at *11)).

## **DISCUSSION**

## I.   **The ALJ's Decision**

In deciding whether Plaintiff was disabled, the ALJ applied the sequential evaluation analyses set forth in 20 C.F.R. §§ 404.1520, 404.1594, 416.920, 416.994 and

determined that Plaintiff met the insured status requirements of the Act through March 31, 2021. (Dkt. 7 at 1138). At step one of the analysis, the ALJ opined that Plaintiff had not engaged in substantial gainful work activity since October 22, 2012, the alleged onset date. (*Id.* at 1139).

At step two, the ALJ found that from October 22, 2012, through February 17, 2020, Plaintiff suffered from several severe impairments: traumatic brain injury, major depressive disorder, bipolar disorder, and cannabis use disorder. (*Id.*). She also determined that Plaintiff's diabetes and obesity were nonsevere impairments. (*Id.* at 1139-40).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 1140). Before proceeding to step four, the ALJ concluded that from October 22, 2012, through February 17, 2020, Plaintiff retained the RFC to perform a full range of work at all exertional levels with additional nonexertional limitations. (*Id.*). Specifically, the ALJ determined that Plaintiff could occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds, or be exposed to extreme heat, moving mechanical parts, unprotected heights, or operate a motor vehicle. (*Id.*). The ALJ also determined that Plaintiff could perform routine and repetitive tasks, work in low stress jobs with only occasional decision making and changes in the work setting, occasional interaction with coworkers and supervisors, and no interaction with the public. (*Id.*). Lastly, the ALJ found

that Plaintiff required close supervision with a supervisor checking on him every hour. (*Id.*).

At step four, the ALJ found that from October 22, 2012, through February 17, 2020, Plaintiff was unable to perform any past relevant work.  (*Id.* at 1145).  Considering Plaintiff's age, education, and work experience, as well as the VE's testimony, the ALJ determined that there were no jobs that existed in the national economy that Plaintiff could perform.  (*Id.* at 1145-46).  As a result, the ALJ concluded that Plaintiff was disabled from October 22, 2012, through February 17, 2020.  (*Id.* at 1146).

Continuing with the additional analysis required in closed disability cases, the ALJ determined that Plaintiff had the same severe impairments that he did during the period from October 22, 2012, through February 17, 2020, and that he had not developed any new severe impairments since February 18, 2020, the date his disability ended.  (*Id.*).  The ALJ also found that beginning February 18, 2020, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id.* at 1146-49).

In the next step, the ALJ concluded that medical improvement occurred as of February 18, 2020, the date Plaintiff's disability ended, and that it was related to Plaintiff's ability to work because there had been an increase in Plaintiff's RFC.  (*Id.* at 1149).  The ALJ proceeded to the next step and found that beginning February 18, 2020, Plaintiff retained the same RFC as he did for the period from October 22, 2012, through February

17, 2020, except that he no longer required close supervision with a supervisor checking on him every hour. (*Id.*).

The ALJ further found that Plaintiff was unable to perform his past relevant work. (*Id.* at 1156). Considering Plaintiff's age, education, and work experience, as well as the VE's testimony, the ALJ determined that there were jobs that existed in significant numbers in the national economy, such as labeler, ticket tagger, and mail sorter that Plaintiff could perform. (*Id.* at 1157). As a result, the ALJ concluded that Plaintiff's disability ended on February 18, 2020, and that he has not become disabled since that date. (*Id.*).

## II.    **The ALJ's Determination is Not Supported by Substantial Evidence**

Plaintiff argues that the ALJ's conclusion regarding the ceasing of his disability as of February 18, 2020, was erroneous. Specifically, he contends that (1) the ALJ's determination of medical improvement was not supported by substantial evidence; (2) the ALJ's assessment of the opinion of Plaintiff's treating social worker and reports from Plaintiff's former employers was improper; and (3) because Plaintiff's disability continued after February 18, 2020, it should have been evaluated under trial work period and re-entitlement rules. (Dkt. 11-1 at 3-4). The Commissioner disagrees and contends that the ALJ properly determined that Plaintiff's impairments had medically improved as of February 18, 2020, and appropriately supported her determination that Plaintiff was no

longer disabled as of that date.  (Dkt. 14-1 at 11-23).  The Court disagrees with the Commissioner for the reasons that follow.

### A.    Medical Improvement Standard

Under the medical improvement standard, the Commissioner "may terminate benefits to a person previously adjudged to be disabled only upon substantial evidence that the individual's condition has improved to the point that he or she is no longer disabled, or that the initial finding of disability was erroneous." *De Leon v. Sec'y of Health & Hum. Servs.*, 734 F.2d 930, 936 (2d Cir. 1984).  The regulations provide that medical improvement is "any decrease in the medical severity of [] impairment(s) . . . present at the time of the most recent favorable medical decision that [a claimant was] disabled or continued to be disabled." 20 C.F.R. §§ 404.1594(b)(1); 416.994(b)(1)(i); *see also Veino v. Barnhart*, 312 F.3d 578, 586-87 (2d Cir. 2002) ("[I]n order to 'determin[e] whether medical improvement has occurred,' the SSA must compare 'the current medical severity of th[e] impairment[ ] . . . to the medical severity of that impairment[ ] at th[e] time' of the most recent favorable medical decision." (citing 20 C.F.R. § 404.1594(b)(7))).  "A determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, and/or laboratory findings associated with [the claimant's] impairment(s)." 20 C.F.R. §§ 404.1594(b)(1); 416.994(b)(1)(i). "In closed-period disability cases like this one . . . the ALJ compares the current severity of the claimant's condition with the severity at the time when the claimant was last found to be

disabled." *Dereje H. v. Comm'r of Soc. Sec.*, No. 19-CV-6514-LJV, 2021 WL 722438, at *2 (W.D.N.Y. Feb. 24, 2021).

If medical improvement has occurred, the regulations instruct the ALJ to compare the claimant's RFC to do basic work activities based on the previously existing impairments with the claimant's prior RFC to determine whether the medical improvement was related to the claimant's work capacity. 20 C.F.R. §§ 404.1594(b)(4);416.994(b)(5)(iii). "Medical improvement is related to [a claimant's] ability to work if there has been a decrease in the severity . . . of the impairment(s) present at the time of the most recent favorable medical decision and an increase in [the claimant's] functional capacity to do basic work activities. . . ." *Id.* §§ 404.1594(b)(3); 416.994(b)(1)(iii). Where medical improvement related to a claimant's ability to work has occurred, the Commissioner "must also show that [the claimant is] currently able to engage in substantial gainful activity before [finding the claimant is] no longer disabled." *Id.* §§ 404.1594(a), 416.994(b). "The ALJ may find medical improvement related to an ability to do work only if an increase in the current RFC is based on objective medical evidence." *Dereje H.*, 2021 WL 722438 at *2.

"The burden to demonstrate that Plaintiff is no longer disabled falls squarely on the Commissioner, . . . and the Commissioner may not, terminate benefits based only on substantial evidence that the claimant is not currently disabled, without regard to whether there has been a demonstrable medical improvement in the claimant's condition."

*Dunsford v. Comm'r of Soc. Sec.*, No. 5:21-CV-1167 (LEK), 2023 WL 2242083, at *10 (N.D.N.Y. Feb. 27, 2023) (citations and quotations omitted).

### B. Lack of Substantial Evidence Supporting Finding of Medical Improvement Related to Ability to Work

Here, as noted, the ALJ determined that as a result of cognitive deficits following a traumatic brain injury that Plaintiff suffered in October 2012, and his subsequent hospitalizations for treatment of a subdural hematoma and intracranial bleed, major depressive disorder, bipolar disorder, and cannabis abuse disorder, Plaintiff was under a disability from October 22, 2012, through February 17, 2020.  (Dkt. 7 at 1140-46).  The ALJ also found that starting on February 18, 2020, Plaintiff's impairments medically improved, explaining:

> Medical records after February 17, 2020, reflect intermittent complaints of symptoms with examinations regularly indicating the claimant is cooperative and alert with appropriate grooming and hygiene, and appropriate eye contact, with no observed persistent deficits in concentration or memory, and no focal neurological deficits, supporting a finding of medical improvement (See Exs. 56F at 6, 9; 57F at 5, 9, 15, 27, 30; 58F at 3, 5, 9, 12, 28; 61F at 4, 8, 16, 32, 50).

(*Id.* at 1149).  Based on this finding of medical improvement, which the ALJ deemed related to Plaintiff's ability to work, the ALJ assessed Plaintiff's new RFC as of February 18, 2020, which was the same RFC as the RFC for the closed period of disability with only one exception—the omission of the limitation requiring Plaintiff to have close supervision with a supervisor checking on him every hour.  (*Id.*).  The ALJ explained that the

requirement to have close supervision by a supervisor in the initial RFC was due to Plaintiff's "cognitive deficits and problems with concentration." (*Id.* at 1142).

To determine whether the ALJ's determination regarding medical improvement of Plaintiff's impairments was proper, the Court must consider whether substantial evidence supports the ALJ's decision that there has been an improvement in Plaintiff's symptoms, signs, or laboratory findings, particularly those related to his cognitive deficits and ability to concentrate, that led to the decrease in severity of Plaintiff's impairments and an increase in his ability to perform work-related activities. Having reviewed Plaintiff's extensive record, the Court finds that the Commissioner has not met the burden to show that substantial evidence supports such a finding.

As an initial matter, it is not clear from the decision why the ALJ used February 17, 2020, as the cutoff date for Plaintiff's closed period of disability. In her decision, the ALJ specifically relied on a treatment record from Plaintiff's primary treating provider Michael T. Asbach, PA-C ("therapist Asbach") of Dent Neurologic Institute dated February 17, 2020, which indicated that Plaintiff was stable that day, denied mania or any new side effects with reemergence of depression, mood instability, or anxiety, and appeared pleasant, cooperative, alert, and without apparent delusions and deficits in his attention, concentration, or memory.[3] (*Id.* at 1155-56; Dkt. 8 at 1162-64). However, the February

---

[3]    At Plaintiff's most recent hearing in 2022, the ALJ erroneously referred to February 2, 2020, as the cutoff date for Plaintiff's closed period of disability when she cited the

17, 2020 treatment record was silent as to any improvement of Plaintiff's impairments because neither his subjective reports of his symptoms, nor the assessment of therapist Asbach address the improvement of Plaintiff's symptoms or discuss how they changed over time.

An additional problem with the ALJ's reliance on the February 17, 2020 treatment record is the ALJ's characterization of the nature of the symptoms Plaintiff shared with his therapist that day. Specifically, the ALJ described the record as reflecting Plaintiff's report that "things were relatively stable, that he falls asleep early in the evening and wakes up after 6-7 hours of sleep, and has restful and restorative sleep," (Dkt. 7 at 1150), but omitted the fact that Plaintiff's difficulties with sleeping habits were his "chief complaint" to therapist Asbach that day (Dkt. 8 at 1162). The treatment record reflects that Plaintiff explicitly reported his unsuccessful attempts to reset his circadian rhythm to the therapist, who noted that Plaintiff "continues to struggle with sleep." (*Id.* at 63). Moreover, although Plaintiff did deny having mania or any new side effects with reemergence of depression or anxiety at this appointment, he continued to "endorse consistent response instability in both depression and anxiety symptoms" despite being compliant with his medication regimen. (Dkt. 8 at 1162). Therefore, the February 17, 2020, psychological treatment record does not clearly explain a decrease of "the symptoms, signs, or laboratory findings [that] . . .

---

February 17, 2020, psychiatric evaluation completed by therapist Asbach. (Dkt. 7 at 1179-80; Dkt. 8 at 1162-64).

support[ed] a determination that there ha[s] been a decrease in medical severity [of Plaintiff's impairments] on that date." *Dereje H.*, 2021 WL 722438, at *3 (citations and internal quotations omitted).

Moreover, other records undercut the ALJ's conclusion that Plaintiff's medical records after February 17, 2020, reflect only intermittent complaints of symptoms with examinations regularly indicating Plaintiff to be cooperative, alert, and with appropriate grooming and hygiene. (Dkt. 7 at 1149). For the closed period before February 2020, the ALJ's decision emphasized medical evidence documenting Plaintiff's symptoms of breakthrough seizures, unstable moods, confusion, short-term and procedural memory problems, impaired concentration, sleep problems, and poor insight and judgment stemming from his impairments, (Dkt. 7 at 1141-43), whereas for the records dated after February 2020, the ALJ instead highlighted the portions documenting his stable mood, good sleep, lack of seizure activity or complaints of headaches, and Plaintiff appearing pleasant, alert, in no acute distress, with appropriate memory, insight, and judgment, linear thought process, and without deficits in attention, concentration, or delusions (*id.* at 1150). However, while Plaintiff did frequently report being "very stable" and denied depression or cognitive deficits after February 18, 2020, the record demonstrates that the same was true during the closed period of disability. In fact, the record both before and after February 18, 2020, is replete with reports of Plaintiff having stable mood without anxiety, depression, mania, delusions, or cognitive deficits, and exhibiting pleasant and alert

appearance, intact memory and concentration, cooperative attitude, and linear thought process without any neurological deficits during his examinations. (*Id.* at 426, 429-34, 659-61, 664-65, 669-70, 932-38, 962-64, 966-70, 973-75, 977, 986, 989-90, 992; Dkt. 8 at 299-13, 591-98, 601, 609, 670, 678, 680, 692-94, 743-44, 749-52, 759-21, 867-71, 872-74, 1064, 1066, 1082, 1097, 1162). Likewise, Plaintiff's treatment records both before and after February 18, 2020, document complaints of confusion, fatigue, depression, insomnia, hallucinations, increased cognitive fogginess, seizures, and trouble with concertation and short-term memory, all of which stemmed from his post-traumatic brain injury, as well as seizure, bipolar, and major depressive disorders. (Dkt. 7 at 663-64, 666-67, 935-39, 946-47, 979-84, 989, 991-92; Dkt. 8 at 308-26, 668-70, 676-83, 743-44, 746-48, 754-56, 824, 841, 843, 865, 867, 1019, 1021, 1064, 1066, 1082, 1085, 1088, 1097, 1101, 1125, 1134, 1138, 1153-56, 1162, 1222-23).[4]

---

[4]    In addition, Plaintiff routinely minimized the severity of his symptoms to his treatment providers, who repeatedly indicated Plaintiff downplayed his symptoms and cognitive impairments and emphasized his extraordinary intelligence. (Dkt. 7 at 976; Dkt. 8 at 750, 852, 1063, 1203). For example, Plaintiff repeatedly declared himself a member of the Mensa society to his providers throughout the entire duration of his mental health treatment at Dent Neurologic Institute since January 2014, claiming his IQ to be 170. (Dkt. 7 at 553). However, the record reflects a community-based work assessment conducted by the New York State Adult Career and Continuing Education Services-Vocational Rehabilitation (ACCES-VR) in June 2017 that demonstrated that Plaintiff's full-scale IQ was 82 at that time instead of 168 that he claimed to have, which "suggest[ed] some significant intellectual impairment." (Dkt. 8 at 656). This is important because the ALJ relied on an apparent improvement of Plaintiff's reported symptoms and his nonremarkable mental health examinations to find him nondisabled as of February 18, 2020.

In short, the ALJ's distinction between the two time periods to support a finding of non-disability beginning on February 18, 2020, is not adequately explained in the decision or supported by the record, and consequently, raises an appearance of cherry-picking. *See Rucker v. Kijakazi*, 48 F.4th 86, 94 (2d Cir. 2022) (improper for the ALJ to cherry-pick instances of plaintiff's normal mental status examinations "[b]ecause a pattern of relative calm punctuated by manic episodes was consistent with Dr. Mirza's diagnosis of unspecified bipolar disorder. . . ."); *see also Quineila B. v. Kijakazi*, No. 3:21CV768 (MPS), 2022 WL 2604593, at *4 (D. Conn. July 8, 2022) (remanding due to lack of support for medical improvement, holding that "because the ALJ did not provide an explanation or identify any specific objective evidence to support her conclusion that the non-exertional limitations she previously found in the RFC had changed, the Court cannot discern the ALJ's rationale").

Similarly, the ALJ's conclusion that Plaintiff's medical records "indicate an improvement in the claimant's symptoms over time with significant improvement in late 2019 and early 2020" (Dkt. 7 at 1150), and that the records after February 17, 2020, reflect "no observed persistent deficits in concentration or memory" and "no focal neurological deficits" (*id.* at 1149), is not supported by the record.

For example, in September 2019, Plaintiff reported to his mental health psychotherapists Victor Yatsynovich, M.D., and Sathia V. Nathan, M.D., that he continued to struggle with anxiety on a consistent basis, felt overwhelmed by basic tasks, and had

difficulty keeping up with his daily activities.  (Dkt. 8 at 867, 869).  Plaintiff presented unkept during the examination and was visibly dirty.  (*Id.* at 869).  In late 2019, Plaintiff reported increased cognitive fogginess, decreased mental clarity, and trouble with his short-term memory over several months following a motor vehicle accident.  (*Id.* at 746, 748).  In February 2020, he continued to struggle with his sleep, and while appearing stable, pleasant, and alert, complained of having difficulties with his sleeping habits and "endorse[d] consistent response instability in both depression and anxiety symptoms" despite being compliant with his medications.  (*Id.* at 743, 1162).  In March 2020, both of Plaintiff's psychotherapists diagnosed him with moderate anxiety and noted that his hygiene remained poor.  (Dkt. 8 at 841, 843, 865, 867).  Plaintiff continued to report feeling anxious, overwhelmed, depressed, hopeless, and having trouble concentrating on things like reading the newspaper or watching television, and performing activities of daily living, while at the same time expressing delusions when proclaiming himself a member of the Mensa society.  (*Id.* at 839, 841, 843, 867).  In May 2020, Plaintiff reported being very anxious and overwhelmed, feeling down and hopeless more than half of the time, having little interests or pleasures in doing things, and having trouble concentrating.  (*Id.* at 854, 856-57, 1059).

In addition, although Plaintiff was compliant with his medication regime, he had two breakthrough nocturnal seizures accompanied by incontinence sometime between May and July 2020, during one of which Plaintiff fell through a wall.  (*Id.* at 1153).  He may

have had more seizure episodes around that time because he woke up several other times with incontinence.  (*Id.* at 1153-56).  Following the seizures, Plaintiff's mother noted Plaintiff's confusion and changes in his mental status.  (*Id.* at 1153).

In August 2020, Plaintiff's treating therapist at Niagara Falls Memorial Medical Center Barbara Hall-Griesmann, LCSW, noted that Plaintiff's abilities to concentrate, focus, and think complexly were impaired.  (*Id.* at 1064).  During Plaintiff's September 2020 visit with Horacio Capote, M.D., at Dent Neurologic Institute, Plaintiff complained about his sleep being very interrupted at night and reported that he could not sit still and was constantly pacing, which made people around him uneasy.  (*Id.* at 1143).  Dr. Capote noted that he was not satisfied with the level of progress and function that Plaintiff displayed, and that Plaintiff's limitations were likely acquired through traumatic brain injury.  (*Id.* at 1145-46).

In February and July 2021, Plaintiff again experienced breakthrough seizures and fell down the stairs during one of them.  (*Id.* at 1085, 1101).  His subsequent medical records revealed his continuous complaints of cognitive deficits that included memory issues and trouble concentrating, little interest or pleasure doing things and feeling depressed and hopeless, having the need to write things down, as well as his mother's repeated concerns regarding Plaintiff having cognitive difficulties and issues with his sleeping patterns.  (*Id.* at 1082, 1088, 1097, 1125).  In June 2022, therapist Hall-Griesmann opined that Plaintiff had poor short-term memory, could concentrate only for short periods

- 20 -

of time, could not pay his bills because this task was too complicated for him, and had poor organizational skills and challenging interpersonal skills because he did not understand what others were saying or was unable to accurately recognize their intensions toward him. (*Id.* at 1015). She further opined that Plaintiff's deficits stemmed from his head injury, and that he could not negotiate the world without receiving assistance from others, maintain competitive employment, communicate effectively with others, run his household, or recognize when people may be taking advantage of him. (*Id.* at 1016).

In August 2022, during his examination by consultative physician Nikita Dave, M.D., Plaintiff reported having decreased short-term memory, and his mother indicated that Plaintiff required supervision during cooking due to his memory problems. (*Id.* at 1189). Later that month, consultative examiner Kevin Duffy, Psy.D., noted Plaintiff's positive anxiety-related symptomatology for excessive worry, apprehension, muscle tension, and difficulty concentrating, as well as his positive manic symptoms for inflated self-esteem and grandiosities. (*Id.* at 1203). Dr. Duffy opined that Plaintiff's insight and judgment were fair to poor, his anxiety was triggered by people in authority making decisions for him, and that Plaintiff's cognizant symptoms and deficits included short-term memory deficits and concentration difficulties. (*Id.*).

The above examples demonstrate that the ALJ's finding that Plaintiff's medical records demonstrated significant improvement in late 2019 and early 2020 and that after February 17, 2020, reflect "no observed persistent deficits in concentration or memory, and

no focal neurological deficits" was not wholly accurate.  And this error cannot be deemed harmless because the ALJ then relied on this premise to conclude that Plaintiff's medical improvement related to his increased ability to work and, as such, assessed him with the same RFC as for the closed period of disability but without the limitation requiring Plaintiff to have close supervision with a supervisor checking on him every hour.  (Dkt. 7 at 1140, 1149).  *See Quineila B. v. Kijakazi*, No. 3:21cv768 (MPS), 2022 WL 2604593, at *4 (D. Conn. July 8, 2022) (failure to explain why the October 8, 2019, medical exam justified the ALJ's finding that plaintiff would no longer be off task or absent from work compared to the closed period of disability).  Further, the error was dispositive in light of the Vocational Expert's testimony that competitive employment was not consistent with close supervision where a supervisor checks in on the person's work every hour.  (Dkt. 7 at 1208).

In sum, while the ALJ was free to make the RFC determination based on her analysis of the record as a whole and the "RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence," *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022), here, she did not meet her burden to build a logical connection between Plaintiff's medical record and her finding that he was no longer required to have close supervision by a supervisor checking on him every hour as of February 18, 2020, and thereafter.  Because the ALJ's decision is lacking the logical bridge from which the Court can glean the ALJ's rationale between the record and the RFC

finding, the Court's meaningful review of the ALJ's analysis is frustrated. *See Kimberly R. v. Comm'r of Soc. Sec.*, No. 21-CV-00079-LJV, 2022 WL 17584196, at *2 (W.D.N.Y. Dec. 12, 2022) ("without a 'tether' between the specific limitation and the medical record . . . this Court cannot perform its required meaningful review of the ALJ's decision" (internal citations omitted)).  As such, remand is required.  *See Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982) (remand for further proceedings or a clearer explanation is warranted where the court is "unable to fathom the ALJ's rationale in relation to evidence in the record"); *Robert M. v. Comm'r of Soc. Sec.*, No. 20-CV-1594-FPG, 2022 WL 336437, at *3 (W.D.N.Y. Feb. 4, 2022) (remanding case where ALJ's conclusion that claimant medically improved was not supported by substantial evidence in the record).[5]

## C.    Plaintiff's Remaining Arguments

Because the Court has determined that remand of this matter for further administrative proceedings is necessary, it declines to address Plaintiff's remaining arguments.  *See Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10

---

[5]    Plaintiff asks the Court to remand this matter for calculation of benefits only; however, generally, that type of remand is granted where the record provides persuasive proof of disability and where remand for further proceedings serves no purpose.  *See Williams v. Apfel*, 204 F.3d 48, 50 (2d Cir. 1999); *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).  The Court declines to remand for calculation of benefits and concludes that here, the better course is to remand the matter for further proceedings to allow the ALJ a proper consideration of the evidence even when such consideration will inevitably prolong the resolution of Plaintiff's claims.  *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996) ("absent a finding that the claimant was actually disabled, delay alone is an insufficient basis on which to remand for benefits").

(N.D.N.Y. Dec. 1, 2016) (declining to address plaintiff's remaining arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined that remand was warranted).

## <u>CONCLUSION</u>

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 14) is denied and Plaintiff's motion for judgment on the pleadings (Dkt. 11) is granted to the extent this matter is remanded for further administrative proceedings consistent with this Decision and Order.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:        June 2, 2025
              Rochester, New York

- 24 -